## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GERALD COVELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05-3207 |
| | ) | |
| HARMON P. MENKIS, TODD | ) | |
| HLAVECK, RALPH SESCO, | ) | |
| DARRELL WASHINGTON, JAMIE | ) | |
| GALLO-WEINSTEIN, LEON | ) | |
| DEVRIENDT, RON SIPEK, LORI | ) | |
| MCKENZIE, JENNY SINGLETON, | ) | |
| and AMY BLOUGH, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Gerald Covell filed this action under 42 U.S.C. § 1983, asserting that his constitutional rights were violated when his employment was terminated.

The Plaintiff's motion for partial summary judgment with respect to some of his claims is denied.

Summary judgment for the Defendants is granted.

# I. INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983, wherein Plaintiff Gerald Covell alleges that his rights under the Due Process Clause of the Fourteenth Amendment to the Constitution were violated when his employment was terminated. The complaint includes twenty counts which are directed at ten Defendants. <u>First</u>, Covell alleges that he was deprived of a property interest in his employment when he was terminated without being afforded either a pre-termination hearing or any post-termination process to challenge his discharge. <u>Second</u>, he contends he was denied certain liberty interests without due process of law when he was terminated from the Illinois Deaf and Hard of Hearing Commission without being afforded certain procedural safeguards.

The Plaintiff claims he is entitled to partial summary judgment against each Defendant regarding the issue of liability in each of the counts which alleges the deprivation of a property interest. The Defendants contend that summary judgment is warranted on all claims because the Plaintiff is unable to establish the denial of any clearly established constitutional rights.

2

## II. FACTUAL BACKGROUND

### (A)

Plaintiff Gerald Covell was employed as the Director of the Illinois Deaf and Hard of Hearing Commission ("IDHHC" or "the Commission") from November 1998 through August 8, 2003.  The Commission is an agency of state government created by the "Deaf and Hard of Hearing Commission Act," (20 ILCS 3932/1 et al.), which coordinates services for and advocates on behalf of deaf and hard of hearing persons in Illinois.

The Defendants' tenures as commissioners for IDHHC were as follows:

> Amy Blough: 6/19/98–12/2/03;
> Leon Devriendt: 6/25/03–11/14/07;
> Todd Hlavacek: 2/28/02–9/10/04, Vice-Chairman in 2003;
> Jamie Gallo-Weinstein: 5/19/03–1/17/06;
> Lori McKenzie: 2/29/00–11/14/05;
> Harmon Menkis: 2/29/00–11/14/05, Chairman in 2003;
> Ralph Sesko: 2/29/00–11/14/06;
> Jenny Singleton: 1/23/06–present;
> Ron Sipek: 2/28/02–11/14/07; and
> Darrell Washington: 11/14/97–11/14/03.

On August 8, 2003, each of the Defendants voted in favor of terminating

3

Covell from his position as Director.

(B)

In 1999, Covell drafted a set of by-laws for the commissioners' consideration.  This included a section headed "Director" which included the following pertinent language: "(1) The Director shall be the executive officer of the Commission; shall be hired, supervised, and evaluated by the Commission; and shall serve at the pleasure of the Commission. . . . (3) The Director shall be afforded the same rights and privileges as outlined in the Personnel Code (20 ILCS 415), except for hiring."  In 2000 and/or 2001, Covell had several conversations with the commissioners regarding the Illinois Department of Central Management Services' ("CMS") attempt to classify the Director's position.  The Plaintiff informed the commissioners that CMS had determined that the nature of the Director's duties were such that the position would not be fully covered by all jurisdictions of the Personnel Code.

The Defendants allege that in discussions regarding the CMS determination, commissioners wanted to follow the law, which stated that

4

other than hiring, evaluation and termination, the Director position was covered by the Personnel Rules. The Plaintiff disputes this allegation, contending that members of the Commission only wanted the flexibility to hire a Director without being subject to the constraints of the Personnel Code. After the CMS determination and discussion with commissioners, and at the direction of CMS, the Plaintiff prepared a request to the Illinois Civil Service Commission to exempt the Director position from Jurisdiction B of the Personnel Code.

In early 2002, the Plaintiff drafted a proposed revision to the Commission's by-laws in keeping with the commissioners' wishes to follow the law and the exemption of the Director position as determined by CMS. Covell claims the objective of the revision was to provide the Director with the same rights as those available under the Personnel Code, other than rights related to hiring. The revision, which was adopted at the June 6, 2002 Commission meeting, deleted the phrase "except for hiring" from paragraph 3 of the section regarding the Director's position. Following the adopting of the changes, Article VI, Section 1, paragraph 3 read, "The

5

Director shall be afforded the same rights and privileges as outlined in the Personnel Code (20 ILCS 415)."

The Commission implemented certain administrative rules which became effective on April 21, 2003.  The Plaintiff notes that Section 3300.380(a) of the Rules of the Commission provides as follows:

> a) The Director shall be the executive officer of the Commission; shall be hired, supervised, and evaluated by the Commission; and shall serve at the pleasure of the Commission.  A 2/3 majority vote of the total membership, discounting vacant seats not currently filled by the Governor, at a regularly scheduled or emergency meeting of the Commission is required to remove the Director from office.
>
> 1) The Director shall be responsible for the development, execution and evaluation of Commission activities and programs; supervise of personnel; propose the Commission's budget; allocate and use of funds; monitoring and/or initiate legislation, regulations, policies and programs; and reports as needed and as advised by the Commission.
>
> 2) The Director shall be afforded the same rights and privileges as outlined in the Personnel Code [20 ILCS 415], except for hiring.

The Plaintiff states that Article VI, Section I of the Bylaws of the Commission, which were in effect in August of 2003, similarly provided:

> 1.  Director shall be the executive officer of the Commission; shall be hired, supervised, and evaluated by the Commission; and shall serve at the pleasure of the Commission.

6

2. The Director shall be responsible for the development, execution and evaluation of the Commission activities and programs; supervision of personnel; proposes the Commission's budget; allocation and use of funds; monitoring and/or initiation of legislation, regulations, policies and programs; reports as needed and as advised by the Commission.

3. The Director shall be afforded the same rights and privileges as outlined in the Personnel Code (20 ILCS 415), except for hiring.

(C)

In or around June 2003, Defendants Todd Hlavacek and Harmon Menkis learned that a prominent advocate for deaf and hard of hearing issues was very upset with Plaintiff because Plaintiff was rude to her and engaged in unprofessional physical contact with her at the Illinois Association for the Deaf Conference. Throughout July 2003, Hlavacek and Menkis learned information from staff and personal observation that led them to investigate Plaintiff's conduct further.

On August 3, 2003, Covell was suspended from his employment without pay because of an allegation made against him of malfeasance and dereliction of duty. After informing Covell of his suspension, on the morning of August 4, 2003, Menkis and Hlavacek met with IDHHC staff,

7

and learned the following regarding Covell's conduct: he (1) misused staff for personal use; (2) used poor judgment in asking staff to represent him at various functions that he should have attended; (3) kept irregular hours; (4) came to work inappropriately dressed; (5) had his children with him at the office; (6) had frequent absences where staff did not know where he was; (7) had few appointments; (8) had an attitude that other agencies were not as important; (9) exhibited egocentric and arrogant behavior; (10) did not travel much; (11) altered his own time sheets; (12) portrayed deaf people in an unbecoming manner; (13) showed disdain for deaf people; (14) created a hostile work environment in taking frustration out on staff; (15) managed by crisis; (16) did not problem-solve among staff; (17) explicit and inexplicit sexual harassment among staff; and (18) caused low morale among staff.  Covell notes that while Menkis and Hlavacek  may have heard such allegations, he was not interviewed during the investigation.

The Defendants further assert that a review of Plaintiff's state-issued laptop computer and office desktop computer revealed that Covell also used his laptop to view thousands of pornographic images, and carried on many

instant message conversations while on state time.  The Plaintiff disputes that this occurred during state time.

(D)

The Defendants allege that, despite their long-held understanding that the Director served at the pleasure of the Commission and could be terminated for any reason, Menkis and Hlavacek sought guidance to ensure that the actions they were taking were appropriate.  They further contend that between mid-July 2003 and August 6, 2003, Hlavacek sought out counsel from individuals in the Office of the Executive Inspector General, the Office of the Attorney General, CMS Personnel Office, and from lawyers at the CMS Office of Labor Relations.  According to the Defendants, the lawyers from CMS informed Hlavacek that Covell was an at-will employee because his position was exempt and served at the "pleasure of the Commission."

A special closed door meeting was scheduled by Menkis and Hlavacek for Friday, August 8, 2003.  The Defendants, as well as Lambert, Sheila Chapman, an ASL interpreter, and Pam Oller, Executive Secretary, were

9

present during the closed session.  In that meeting, Hlavacek advised the commissioners about steps they had taken to determine how best to proceed.  After consideration of this information and the allegations Menkis and Hlavacek had uncovered during their investigation, the commissioners (all of the Defendants) voted to terminate Covell's employment.

The Plaintiff notes that at no time before he was terminated from his employment with the Commission did the Defendants provide him with: a) any specification of the allegations or charges of misconduct made against him; b) an explanation of any evidence which the Commission possessed in support of the allegations; or c) an opportunity to respond to the allegations of misconduct or the evidence against him.  Moreover, they did not offer to provide Covell with any type of hearing to consider whether he had engaged in conduct warranting his discharge.  On August 21, 2003, Covell sent an email to Menkis wherein he asked for an explanation of the allegations made against him.   Menkis refused to provide the Plaintiff with an explanation concerning why he was terminated.

(E)

Covell seeks interlocutory summary judgment against each of the Defendants with respect to the issue of liability in each of the counts in his complaint alleging the deprivation of a property interest. He asks the Court to determine that: 1) in August of 2003 he enjoyed a property interest in his employment with the Commission; 2) the Defendants, in terminating his employment with the Commission, deprived him of that interest; and 3) in failing to provide him with either a pre-termination hearing or some type of post-deprivation process, the Defendants deprived him of due process of law.

The Defendants seek the entry of summary judgment on the basis of qualified immunity. They contend they are entitled to qualified immunity as to the Plaintiff's procedural due process claim for one or more of the following reasons: 1) Covell did not have a property interest in his position as Director; and/or 2) it was not clearly established in August 2003 that a Director is entitled to any process prior to or following his termination. The Defendants further claim they are entitled to qualified immunity as to Plaintiffs' liberty interest claim for one or more of the following reasons: 1)

Covell was not stigmatized by allegations surrounding his termination; 2) he cannot show that Defendants personally participated in the public disclosure of stigmatizing information; 3) Covell cannot show that he suffered a tangible loss of other employment opportunities in his field of endeavor; and/or 4) it was not clearly established that the complained-of conduct violated the Plaintiff's constitutional rights.

### III. ANALYSIS

The Plaintiff notes that, because it is undisputed he did not receive a pre-termination hearing or post-termination process, the only real dispute on his first claim concerns whether he had a property interest in his employment with the Commission.  He contends that the Commission's bylaws and regulations created such an interest.

The Defendants first contend that Covell has failed to establish a constitutional deprivation as he had no property interest in his position.  If the Court were to find that Plaintiff did have a property interest in his position, the Defendants contend that it was not clearly established in August 2003 that the complained of conduct was a constitutional

12

deprivation of his due process rights.  The Defendants further allege they are entitled to qualified immunity since they reasonably relied on the advice of experts in their treatment of Plaintiff as an at-will employee.

### A. Legal standards

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists.  Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004).  The Court construes

13

all facts and makes all reasonable inferences in favor of the non-moving party.  <u>Magin v. Monsanto Co.</u>, 420 F.3d 679, 686 (7th Cir. 2005).

Government officials performing discretionary functions are entitled to qualified immunity, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987) (citations omitted).  A two-part test is used to analyze qualified immunity.  First, the complaint must allege facts that, if true, would violate a constitutional right; next, the violation must be "clearly established" so that a reasonable public official would have known that his conduct violated the law.  <u>See Moss v. Martin</u>, 473 F.3d 694, 702 (7th Cir. 2007) (citation omitted).  If a plaintiff alleges the violation of a constitutional right, the question becomes "whether a reasonable state actor would have known that his actions, viewed in the light of the law at that time, were unlawful." <u>Nabozny v. Podlesny</u>, 92 F.3d 446, 456 (7th Cir. 1996).

B. <u>Property interest claims</u>

(1)

14

To prevail on a claim under the Due Process Clause, Covell must demonstrate that he had a cognizable property interest in his employment and that he was deprived of that interest without receiving due process of law.  See Moss, 473 F.3d at 700 (citations omitted).  "Under Illinois law, a person has a property interest in his job only where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement."  Id. (citations omitted).  A plaintiff must point to "a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him."  Id. (citation omitted).

"A protected property interest in employment can arise from a statute, regulation, municipal ordinance, or an express or implied contract–those rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Border v. City of Crystal Lake, 75 F.3d 270, 273 (7th Cir. 1996) (internal quotation marks and citations omitted).  One district court has observed that "[u]nder Illinois law, only public employees who cannot be dismissed except for cause have a property interest in their positions . . . and in the absence of a fixed term of office

created by law, a public employee holds his or her position at the pleasure of the appointment officer and may be removed at any time." Williams v. Hostetler, 2008 WL 123655, at *2 (S.D. Ill. Jan. 9, 2008) (internal citation and citations omitted).

The Plaintiff states that for a public employee's interest in his job to constitute a property right, the government must have "earlier conferred upon him a right of continued employment by telling him, in a manner that made it reasonable for the employee to expect the state to stand behind its word, that it would continue to employ him." Lee v. Cook County, 862 F.2d 139, 141 (7th Cir. 1988) (quoting Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1263 (7th Cir. 1985) (citation omitted)). Moreover, it is not necessary for an explicit contract to exist between the parties for there to be a property interest. A policy or custom can form the basis of a property interest. See Davis v. City of Chicago, 841 F.2d 186, 188 (7th Cir. 1988). The Plaintiff notes, for example, that in Perry v. Sindermann, 408 U.S. 593, 602 (1972), the Supreme Court held that it might be possible for an untenured professor at a state college to have a

protected property interest in continued employment if the college utilized a defacto tenure system.

(2)

The Illinois General Assembly passed the Personnel Code to establish a system of personnel administration for the State government under the Governor.  <u>See</u> 20 ILCS 415/2.  "All offices and positions of employment in the service of the State of Illinois shall be subject to the provisions of this Act unless exempted in this or any other Act."  20 ILCS 415/4.  The general rule is that under the Personnel Code, department directors and members of commissions are at-will employees.  <u>See</u> 20 ILCS 415/4c(7), amended by 2008 Ill. Legis. Serv. P.A. 95-728 (S.B. 970).

The Defendants note that the Personnel Code also provides for partial exemptions, including an exemption from Jurisdiction B for those Directors and positions which the Civil Service Commission determined, based on a recommendation of the Director of CMS, "involve either principal administrative responsibility for the determination of policy or principal administrative responsibility for the way in which policies are carried out."

17

20 ILCS 415/4d(3).  Employees in positions in State service subject to Jurisdiction B may be discharged only for cause.  See 20 ILCS 415/8b(a); 20 ILCS 415/8b.16.  Generally, positions protected by Jurisdiction B must be filled pursuant to the merit and fitness provisions of Jurisdiction B.  20 ILCS 415/8b.

The Illinois Deaf and Hard of Hearing Act states that the "Director of the Commission shall be hired, evaluated, and terminated by the Commission."  20 ILCS 3932(20).  In 1999, the Plaintiff drafted by-laws for the IDHHC commissioners' consideration.  The bylaws included a section titled "Director," which said in pertinent part: "(1) The Director shall be the executive officer of the Commission; shall be hired, supervised, and evaluated by the Commission; and shall serve at the pleasure of the Commission. . . .  (3) The Director shall be afforded the same rights and privileges as outlined in the Personnel Code (20 ILCS 415), except for hiring."

Eventually the Plaintiff, at the direction of CMS, prepared a request to the Civil Service Commission to exempt the Director position from

18

Jurisdiction B of the Personnel Code.  In March of 2002, the Plaintiff drafted a proposed revision to the Commission's bylaws in keeping with the commissioners' wishes to follow the law and the exemption of the Director position as determined by CMS.  According to Covell, the objective was to provide the Director with the same rights as those available under the Personnel Code, other than rights related to hiring.  The revision, which was adopted at the June 6, 2002 Commission meeting[1], deleted the phrase "except for hiring" from paragraph 3 of the section regarding the Director's position.  Following the changes, Article VI, Section I, paragraph 3 read, "The Director shall be afforded the same rights and privileges as outlined in the Personnel Code (20 ILCS 415)."

---

[1] The Plaintiff alleges that the amendment the Defendants refer to occurred on September 11, 2003.  However, based on the exhibits attached to the partial summary judgment motion, the relevant portion of the bylaws after September 11, 2003 reads: "The Director's position will be governed in all aspects by the Personnel Code . . . and in accordance with the Deaf and Hard of Hearing Commission Act . . . which states that the Director of the Commission shall be hired, supervised, evaluated, and terminated by the Commission.  A simple majority vote of the total membership, discounting vacant seats not currently filled by the Governor, at a regularly scheduled or emergency meeting of the Commission, is required to remove the Director from office."  See Article VI, Section I, Paragraph 1.  The "except for hiring" language was in Article VI, Section 1, Paragraph 3 of the bylaws following the March 14, 2002 amendments.  According to Exhibit 6 submitted by the Defendants, the language appears to have been deleted in June 2002.

(3)

The Plaintiff contends the fact that neither the Personnel Code nor the Act provide him with a property interest is not fatal to his due process claim because the Commission's administrative rules and bylaws each provide him with that interest.  An employee covered by Jurisdiction B of the Personnel Code had the right to not be removed or discharged  "except for cause" and after an opportunity to be heard in his own defense.  See 20 ILCS 415/11.  The Plaintiff notes that a regulation or rule promulgated by a state agency pursuant to law may create a property interest in employment without regard to the traditional requirements of contract formation, even if the statute authorizing it does not create the entitlement.  See Hohmeier v. Leyden Community High Schools Dist. 212, 954 F.2d 461, 464-65 (7th Cir. 1992) (citations omitted).

Additionally, the Plaintiff claims that the regulation accompanied by Covell's acceptance of its terms by continuing to work for the Commission created a contract under Illinois law which modified the employee's at-will status.  The Illinois Supreme Court has held:

> [A]n employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed.

Duldulao v. St. Mary of Nazareth Hosp. Center, 115 Ill.2d 482, 490, 505 N.E.2d 314 (1987). The Plaintiff contends the regulation satisfies the Duldulao requirements. The language of the rule is clear and, because of his position as the Commission's Director, Covell was aware of its existence. He was also involved in Commission activities to ensure that it could hire an Executive Director without being bound by the hiring requirements of the Personnel Code, while at the same time afford the Director once hired with the rights available under that law. The Plaintiff notes he continued to work for the Commission after the regulation became effective.

Jurisdiction B alters an employee's status from an at-will employee to

21

an employee who can only be terminated for cause.   The Defendants contend that the actions of the Commissioners in deleting the "except for hiring" language in the bylaws supports the contention that the Director position was intended to be provided the rights and privileges it was eligible for pursuant to the Personnel Code, namely rights and privileges under Jurisdiction A and C.   They assert that Article 3, Section 1, Paragraph 3 must be read as affirming the Director is entitled to rights and privileges under Jurisdiction A and C, but not B, as the Director serves "at the pleasure of the Commission."   The Defendants allege that any other reading would run contrary to Illinois law regarding personnel administration, the Personnel Code and the Act, which provides that the Director "shall be hired, supervised, evaluated, and terminated by the Commission," see 20 ILCS 3932/20, but also in direct contradiction to the provision in the by-laws that the Director serves at the pleasure of the Commission.

The Plaintiff notes that Defendants argue there is an inconsistency in the rule because at one point it provides that the Director shall serve at the pleasure of the Commission while at another it states that the Director

22

would have the same rights as are available under the Personnel Code (other than hiring), which the Plaintiff claims would include protection from termination except for cause.  Covell contends that, to the extent there is such an ambiguity in the rule because of the inconsistency, it must be construed against the Commission and its members who drafted and were responsible for that language.  The Defendants assert that it is Covell who was responsible for the language.  Thus, any ambiguity should be construed against the Plaintiff.  The Defendants also allege the ambiguity bolsters their claim they are entitled to qualified immunity since any lack of clarity would show that they did not violate any clearly established constitutional rights.

The Plaintiff contends that the Defendants ignore the plain language of the Commission's written policies and claim that the regulation and bylaws mean something other than what they say.  He further asserts that Defendants employ unsound logic in ignoring the plain meaning of the regulation which provides that the Executive Director is entitled to the same protections as are provided under the entire Personnel Code (and not just

certain jurisdictions), and allege that what was intended is that the Director be entitled to all rights except for those enumerated in Jurisdiction B (which includes the right to be terminated only for cause).

The Plaintiff further notes that neither the regulations nor bylaws have ever said that the Director's position is covered by the Personnel Code. Rather, they say the Director shall have "the same rights and privileges as outlined in the Personnel Code." The Director would have those rights available as if he was covered by the Personnel Code. The Plaintiff claims that if the Director was actually covered by some or all of the Personnel Code's provisions, then that provision would be unnecessary. Accordingly, Covell contends that whether his position was actually covered by the Personnel Code or exempted from coverage is irrelevant.

The Defendants state that Plaintiff implies that the commissioners' actions in June 2002 were based on their desire to be able to hire a deaf director in the future. To the extent that Plaintiff argues the commissioners intended to provide him an extension of Personnel Code protection for all employment matters, other than hiring, the Defendants assert that any such

attempt was beyond the commissioners' authority.  They note that the General Assembly specifically created a provision for extension of jurisdiction within the Personnel Code, <u>see</u> 20 ILCS 415/4b, but there is no evidence that the commissioners sought to undergo this process in order to provide the Plaintiff with all of its protections, except for the specific provisions relating to hiring.  Based on the foregoing, the Defendants argue that Plaintiff cannot make out a property interest due process claim.

The Plaintiff claims that, in arguing the Commission acted beyond its authority in enacting the rule, the Defendants miss the point.  At no place in the rule does it say that the Director shall be covered by the provisions of the Personnel Code.  Members of the Commission requested an exception to ensure that the Director's position would not be covered.  The Plaintiff alleges it provides that although the Director is not covered by the Personnel Code, he would (with the exception of hiring) have the same rights and privileges which would be available to an employee covered by the Personnel Code.

(4)

25

The Court concludes that, even when the facts are viewed in the light most favorable to the Plaintiff, he did not have a property interest in his position as Director of IDHHC.  Based on the language in the Illinois Deaf and Hard of Hearing Act and in the bylaws, the Plaintiff did not have an objectively reasonable basis for believing that he had such an interest.  The language in the Act which states that the Director "shall be hired, supervised, evaluated, and terminated by the Commission" and the portion of the bylaws which states that he "shall serve at the pleasure of the Commission" foreclose Covell's argument.

The Court is not persuaded by the Plaintiff's reliance on the language in the Commission's administrative rules or bylaws which states that "[t]he Director shall be afforded the same rights and privileges as outlined in the Personnel Code."  This is because the Personnel Code provides multiple rights and privileges.  The language on which Covell relies appears to refer to rights and privileges under Jurisdictions A and C.  This is the most likely interpretation when it is considered in conjunction with the aforementioned language in the Act and provision of the bylaws.  The Plaintiff has not

pointed to any language which says the Director is entitled to the protections of Jurisdiction B, which is necessary to alter an employee's job status to one that can be terminated only for cause.

The Plaintiff's argument that any ambiguity in the language in the administrative rules and bylaws must be construed against the Defendants misses the mark. Specifically, the rule at one point provides that the Director shall serve at the pleasure of the Commission while also stating that he would have the same rights and privileges as are available under the "Personnel Code," excluding hiring, which the Plaintiff believes includes protection against discharge except for cause. The language on which Covell relies is anything but clear; thus, it fails the first requirement under Duldulao. Although the Plaintiff contends that any ambiguity must be construed against the Commission and its members who drafted and were responsible for that language, he does not dispute the Defendants' assertion that it was he who drafted the original bylaws and all subsequent changes.

There is nothing in the record tending to show that the Director of the Commission is entitled to the protections of Jurisdiction B. Because the

27

Director serves "at the pleasure of the Commission," the Court finds that the most plausible reading of the disputed language is that the Director is entitled to the rights and privileges under Jurisdiction A and C of the Personnel Code, but not Jurisdiction B.  Thus, the Plaintiff did not have a property interest in his position as Director of the Commission and the Defendants are entitled to summary judgment on those claims.[2]

C. Liberty interest claims

The Plaintiff also asserts counts against each of the Defendants claiming that he was denied certain liberty interests without due process of law when he was terminated from his employment with the Commission. "[W]hen an employee claims that a government employer has infringed his liberty to pursue the occupation of his choice, the employee must show that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing

---

[2]Alternatively, the Court finds that even if there is a genuine issue of material fact regarding whether Covell had a property interest in his position, it was not clearly established that Defendants' conduct in these circumstances would have violated that right.  Specifically, because of the language in the Act and in the bylaws which provided that the Director serves at the pleasure of the Commission, it would not have been clear to a reasonable public official that terminating the Plaintiff's employment violated his constitutional rights.  Thus, the Defendants are entitled to qualified immunity on the Plaintiff's property interest claims.

28

information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." <u>Townsend v. Vallas</u>, 256 F.3d 661, 669-70 (7th Cir. 2001) (citations omitted).  The employee typically must "show that the defendants called into question his 'good name, reputation, honor or integrity' in a way that made it 'virtually impossible for the employee to find new employment in his chosen field.'" <u>McMahon v. Kindlarski</u>, 512 F.3d 983, 988 (7th Cir. 2008) (quoting <u>Townsend</u>, 256 F.3d at 670).

The Defendants point to several reasons why they believe the entry of summary judgment is appropriate.  <u>First</u>, they allege that Covell was not stigmatized by the allegations surrounding his termination.  <u>Second</u>, the Defendants assert that Plaintiff cannot show the Defendants publicly disclosed stigmatizing information.  <u>Third</u>, they contend he cannot show that he suffered a tangible loss of other employment opportunities due to any public disclosure of stigmatizing information by the Defendants.  <u>Fourth</u>, the Defendants allege that qualified immunity is appropriate because it was not clearly established that the conduct in question violated

Covell's constitutional rights.

The first allegation which the Plaintiff alleges is stigmatizing is that he used a state-issued laptop computer to view pornographic material while on state time.  He denies this occurred during state time.  The Plaintiff further asserts the false allegation that he altered his own time sheets calls into question his honesty and is also stigmatizing.

There were at least three individuals present at the meeting on August 8, 2003, who were not members of the Commission.  These included IDHHC staff members Janet Lambert, an interpreter/administrative assistant, and Pamela S. Oller, the Executive Secretary.  Sheila Chapman, an interpreter, was also at the special closed meeting.

The Court concludes that Plaintiff is unable to establish that the Defendants disseminated stigmatizing information.  Relying on Mitchell v. Glover, 996 F.2d 164 (7th Cir. 1993) and Ratliff v. City of Milwaukee, 795 F.2d 612 (7th Cir. 1986), the Plaintiff claims he need not show that the Defendants publicly disclosed stigmatizing information.  Covell contends those cases require only that the government employer have a role in

30

disclosing the information.  He points to the following passage in <u>Ratliff</u>:

> Absent proof that the Police Department or any of the defendants disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large, she cannot show that the defendants' actions impinged on her liberty interest in pursuing her occupation.

795 F.2d at 627.  Covell further notes the court in <u>Mitchell</u> observed that in order "to implicate a liberty interest, the government must still have participated in the dissemination of this information to the public."  996 F.2d at 167 (citation omitted).  Based on the foregoing, the Plaintiff alleges that it is sufficient to impose liability if the information was disseminated either by the Defendants or another representative of the Commission.

As the Defendants note, however, <u>Ratliff</u> and <u>Mitchell</u> both include the employing entity as a defendant.  This case includes only individual members of the Commission as Defendants.  Section 1983 deals only with individual liability.  <u>See</u> 42 U.S.C. § 1983 ("Every person who . . . subjects, or causes to be subjected . . . any citizen . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .).  In order for any Defendant to be determined to be

31

liable, he or she must personally have participated in the constitutional violation.

The Plaintiff alleges that Michael Cowles, the then-personnel officer for the Commission, was provided "stigmatizing information" by either Menkis or Hlavacek at some point during the investigation. This is the closest the Plaintiff comes to asserting that a specific Defendant publicly disclosed stigmatizing information. Because Cowles was affiliated with the Commission, however, that does not constitute public disclosure. According to the Plaintiff, the allegations became known by others who had business associations or were served by the Commission. Covell alleges that the source of this information had to come from either a member of the Commission or someone in attendance at the meeting.

Based on the foregoing, the Plaintiff contends that the release and dissemination of this information had to originate from either Menkis, Hlavacek, another member of the Commission or a Commission employee in attendance at the termination meeting. Thus, the Plaintiff acknowledges that the information could have been disseminated by a non-Commission

member and non-Defendant in this case.  Covell has no personal knowledge that any Defendant disclosed such information.  All of the Defendants are, therefore, entitled to summary judgment on the Plaintiff's liberty interest claims because Plaintiff cannot establish that any of the Defendants called into question his "good name, reputation, honor or integrity."  The Defendants cannot be held liable under section 1983 for the actions of others, even if the other individuals are affiliated in some way with the Commission.  Thus, they are entitled to summary judgment on the liberty interest claims.

Although the Court has concluded Plaintiff is unable to establish that any Defendant publicly disseminated stigmatizing information, it also is worth noting it is unclear that it was ever alleged that Plaintiff used his State-issued computer to view pornography while on work time.  According to the Chairperson's report which was submitted to Commission members at the August 8, 2003 meeting, the only mention of pornography is that "volumes of pornographic material/videos/pictures on state issued laptop" were found.  It says nothing about whether this material was viewed during

33

work hours.  Because Covell says he was told he could use his state-issued computer for personal purposes, he emphasizes the key to this allegation is that he viewed pornography during work hours.  The Chairperson's report does not support Covell's assertion.  It does say that Plaintiff used his state-issued computer to frequently engage in instant messaging while on state time.  However, it says nothing about viewing pornography during work hours.  Of course, this is a moot point because the Plaintiff cannot establish that any Defendant disseminated this or any other information pertaining to his termination.

## IV. CONCLUSION

Even when the record is viewed in the light most favorable to the Plaintiff, the Court concludes that he did not have property interest in his position as Director of the Commission.  Moreover, the Plaintiff's liberty interest claims fail because he did not show that any individual Defendant publicly disseminated stigmatizing information about him.  Accordingly, the Defendants are entitled to summary judgment on all claims.

Ergo, the Defendants' motion for summary judgment [d/e 42] is

34

ALLOWED.  The Plaintiff's motion for partial summary judgment [d/e 45] is DENIED.

The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

ENTER: August 4, 2008

FOR THE COURT:

s/Richard Mills
United States District Judge